IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHLEEN JAFFE,<br><br>      Plaintiff,<br>-vs-<br><br>THOMAS JEFFERSON UNIVERSITY d/b/a JEFFERSON HEALTH; ANNETTE YERKES *(individually);* and CHRISTINE WOMBOLD *(individually);*<br><br>      Defendant. | Civil Action No. |

Plaintiff, Kathleen Jaffe, by and through her attorneys, Freundlich and Littman, LLC, hereby files the following civil action complaint against Defendants, Thomas Jefferson University d/b/a Jefferson Health; Annette Yerkes; and Christine Wombold (collectively referred to as "Defendants"), for violations of Title VII of the Civil Rights Act of 1964, as codified at 42 U.S.C. §§ 2000e to 2000e-17, as amended by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"); the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq. ("ADEA"); and the Pennsylvania Human Relations Act, 43 P.S. §§ 951 et seq. ("PHRA").

**PARTIES**

1. Plaintiff, KATHLEEN JAFFE (hereinafter referred to as "Plaintiff" or "JAFFE"), is an adult individual and a resident of the County of Philadelphia in the Commonwealth of Pennsylvania.

2. Defendant, THOMAS JEFFERSON UNIVERSITY d/b/a JEFFERSON HEALTH (hereinafter referred to as "Defendant" or "JEFFERSON"), is a domestic nonprofit corporation organized and existing under the laws of the Commonwealth of Pennsylvania and authorized to conduct business therein.

3. At all times material, Defendant JEFFERSON maintained its principal corporate headquarters at 1101 Market Street Street, Philadelphia, Pennsylvania 19107.

4. At all times material, Defendant JEFFERSON operated a hospital located at 1015 Walnut Street, Philadelphia, Pennsylvania 19107, where Plaintiff was employed.

5. At all times material, Defendant ANNETTE YERKES (hereinafter referred to as "Defendant" or "YERKES") was employed by Defendant JEFFERSON.

6. At all times material, Defendant YERKES was employed as a Nurse Manager for Defendant JEFFERSON.

7. At all times material, Defendant YERKES held supervisory authority over Plaintiff.

8. At all times material, Defendant CHRISTINE WOMBOLD (hereinafter referred to as "Defendant" or "WOMBOLD") was employed by Defendant JEFFERSON.

9. At all times material, Defendant WOMBOLD was employed as a Nurse Manager for Defendant JEFFERSON.

10. At all times material, Defendant WOMBOLD held supervisory authority over Plaintiff.

11. At all times relevant to this Civil Action, Defendants were Plaintiff's employer and employed at least fifteen (15) employees.

12. At all times relevant to this Civil Action, Plaintiff was qualified for her position with Defendants.

## JURISDICTION AND VENUE

1. Jurisdiction of this action is conferred upon this Court pursuant to a Federal Question under Title VII of the Civil Rights Act of 1964.

2. This Court also has supplemental jurisdiction over the State causes of action.

3. Venue is proper in the Eastern District of Pennsylvania as Plaintiff was employed by Defendants and worked in the County of Philadelphia in the Commonwealth of Pennsylvania where the discrimination, harassment and hostile work environment complained of occurred.

4. On or around January 31, 2025, Plaintiff, KATHLEEN JAFFE, filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants as set forth herein.

5. Plaintiff's Charge of Discrimination was dual filed with the Pennsylvania Human Relations Commission ("PHRC") and the Philadelphia Commission on Human Relations ("PCHR").

6. Plaintiff's rights under the Pennsylvania Human Relations Act and the Philadelphia Fair Practices Ordinance will be ripe for suit one year after Plaintiff's Charge of Discrimination was dual filed at the PHRC and the PCHR.

7. Plaintiff includes her claims under the PHRA in his civil action complaint today in the interest of judicial economy, as Plaintiff's rights under these laws will be ripe in approximately 30 days.

8. On or around July 28, 2025, the EEOC issued and sent a Dismissal and Notice of Rights to Plaintiff which set forth the requirement that Plaintiff file a civil action within ninety (90) days of the Dismissal and Notice of Rights.

9. This action is hereby commenced within ninety (90) days of the date when Plaintiff received the Dismissal and Notice of Rights which is dated and was sent July 28, 2025.

## MATERIAL FACTS

10. On or around June 1, 2019, Plaintiff was employed by the hospital during its ownership under Einstein Health. In or around 2022, the ownership of the hospital transitioned to Jefferson Health. Defendant engaged Plaintiff for the position of Nurse Manager, Gastrointestinal (GI).

11. At all relevant times, Plaintiff demonstrated exceptional performance in her position, consistently executing her job responsibilities with diligence and a high degree of competence.

12. Plaintiff maintained a record free of disciplinary actions or formal reprimands throughout her employment. Additionally, Plaintiff achieved numerous professional accomplishments during her tenure.

13. At all times relevant hereto, Plaintiff was an adult female, 60 years of age.

14. In or around June 2024, Plaintiff became aware of an open position for the role of Pre-Admission Testing Nurse Manager. Believing she was a strong candidate for the position, Plaintiff applied, as she exceeded the qualifications and tenure requirements for the role.

15. On or around July 2, 2024, Plaintiff participated in an interview for the position. The interview was conducted by Defendants Yerkes and Wombold. At the time, Defendant Yerkes served as Plaintiff's direct supervisor, while Defendant Wombold served as the direct supervisor of Defendant Yerkes.

16. Following the interview, Plaintiff waited approximately six (6) weeks without receiving any feedback or notification regarding whether she had been considered or selected for the position.

17. On or around August 15, 2024, Plaintiff was in the GI unit and approached Defendant Yerkes, inquiring, "Good afternoon, have you received any information regarding the decision on the PAT Manager position?"

18. In response, Defendant Yerkes stated, "Well, Christine Wombold and I have decided that it would be best to have a man in that position."

19. Approximately two (2) weeks later, Defendant Yerkes was engaged in a conversation with the Gastrointestinal technicians and Plaintiff. During the conversation, Defendant Yerkes remarked to Plaintiff, "I believe we could use a bit more testosterone back there [in the unit]."

20. Approximately one week after Defendant Yerkes informed Plaintiff that a male candidate had been hired for the position, Defendant Yerkes returned two to three days later, visibly upset. It was later revealed that one of the nurses was the male candidate's sister.

21. Ultimately, the female nurse was reassigned from the unit to accommodate the male candidate, which further demonstrated Defendants' preference for a male occupant in the position.

22. The male candidate commenced his position in early October 2024. He lacked leadership experience, was less qualified, was younger, and had no perioperative experience.

23. Michael Niklauski is an employee of Defendant Jefferson who held the position of Human Resource Business Partner.

24. Plaintiff submitted a letter to Michael Niklauski in which she reported discriminatory conduct within the unit and raised concerns about Defendants' hiring practices. In the letter, Plaintiff stated that she believed she was being unlawfully discriminated against based on her gender.

25. Defendant Jefferson took no action to investigate or address the discriminatory practices surrounding Plaintiff's situation.

26. On or about December 14, 2024, Plaintiff was constructively terminated from her position. Plaintiff realized that there were no growth opportunities at Defendant Jefferson, which she believed were influenced by her gender and age.

27. Plaintiff was constructively terminated due to her membership in a protected class.

28. Defendants created a hostile work environment because no reasonable female in Plaintiff's position would have been able to continue to work in a place where management was favoring, hiring, and promoting male employees to the detriment of female employees.

29. Defendants refused to take any action designed to investigate and correct the discrimination and harassment in the workplace.

30. Defendants engaged in willful and intentional conduct aimed at depriving Plaintiff of her right to work in a discrimination-free environment under federal and state law.

31. Defendants failed to investigate Plaintiff's complaints or take appropriate remedial measures, ratified discriminatory and retaliatory conduct, and fostered a hostile work environment based on Plaintiff's sex and age.

32. Plaintiff was subjected to unlawful sex and age discrimination, retaliation, and a hostile work environment, resulting in loss of income, benefits, emotional pain, humiliation, and other damages.

33. Defendants' conduct was willful and/or in reckless disregard of Plaintiff's federally protected rights, warranting punitive damages under Title VII and appropriate damages under state law.

34. The foregoing conduct demonstrates ongoing discrimination and retaliation by Defendants toward Plaintiff.

**COUNT I**
**<u>FOR DISCRIMINATION UNDER TITLE VII</u>**
(Against Defendant Thomas Jefferson University d/b/a Jefferson Health)

32. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

33. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), makes it unlawful for an employer to fail or refuse to hire, to discharge, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment because of such individual's sex.

34. Defendants engaged in unlawful employment practices by discriminating against Plaintiff based on her sex and gender.

35. Defendants Yerkes and Wombold, acting in their supervisory capacities, made explicit gender-based comments—such as stating that it "would be best to have a man" in the position—and selected a less-qualified male candidate over Plaintiff, demonstrating discriminatory motive.

36. Such conduct constitutes direct evidence of sex discrimination in violation of Title VII. See *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250 (1989) (recognizing that gender stereotyping is actionable under Title VII).

37. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has suffered and continues to suffer economic loss, emotional distress, humiliation, and other damages.

## COUNT II
## RETALIATION UNDER TITLE VII
(Against Defendant Thomas Jefferson University d/b/a Jefferson Health)

38. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

39. Title VII, 42 U.S.C. § 2000e-3(a), makes it unlawful for an employer to discriminate against an employee because she has opposed any practice made unlawful by Title VII or because she has participated in any investigation or proceeding under Title VII.

40. Plaintiff engaged in protected activity when she submitted a written complaint to Human Resources Partner Michael Niklauski reporting gender-based discrimination and bias in the hiring process.

41. Thereafter, Defendants failed to investigate Plaintiff's complaint and subjected her to continued discriminatory treatment, ultimately resulting in her constructive termination.

42. Defendants' retaliatory conduct violated Title VII. See *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (defining actionable retaliation as conduct that "might well dissuade a reasonable worker from making or supporting a charge of discrimination").

43. As a result of Defendants' retaliation, Plaintiff has suffered loss of income, career advancement, benefits, and severe emotional distress.

## COUNT III
## DISCRIMINATION UNDER STATE LAW

44. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

45. The PHRA, 43 P.S. § 955(a), makes it unlawful for any employer to discriminate against an individual in the terms, conditions, or privileges of employment because of such individual's sex, age, or other protected status.

46. Defendants discriminated against Plaintiff on the basis of her gender and age in violation of the PHRA by refusing to promote her, tolerating sexist remarks, and constructively terminating her employment.

47. As a direct and proximate result of Defendants' actions, Plaintiff has suffered loss of income, benefits, emotional pain, humiliation, and other damages recoverable under the PHRA.

## COUNT V
## RETALIATION UNDER STATE LAW

48. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

49. Section 955(d) of the PHRA prohibits employers from retaliating against individuals for opposing discriminatory practices or for participating in any investigation or proceeding under the PHRA.

50. Plaintiff engaged in protected activity when she complained to Human Resources about discriminatory hiring practices.

51. Defendants retaliated against Plaintiff by failing to investigate, isolating her in the workplace, and constructively discharging her in response to her complaints.

52. Defendants' conduct constitutes unlawful retaliation under 43 P.S. § 955(d). See *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002) (retaliation claims under the PHRA are interpreted consistently with Title VII standards).

53. As a result of Defendants' retaliatory conduct, Plaintiff suffered financial loss, emotional distress, and reputational harm.

## COUNT IV
## DISCRIMINATION UNDER STATE LAW – AIDING AND ABETTING
**(against individual Defendants only and not against corporate Defendants)**

54. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

55. The PHRA, 43 P.S. § 955(e), makes it unlawful for any person to aid, abet, incite, compel, or coerce the doing of any act declared unlawful by the PHRA.

56. Defendants Yerkes and Wombold aided and abetted Defendant Jefferson's discriminatory and retaliatory conduct by participating in, condoning, and failing to correct the discriminatory hiring and treatment of Plaintiff.

57. Defendants Yerkes and Wombold's conduct constitutes individual liability under the PHRA. See *Dici v. Commonwealth of Pennsylvania*, 91 F.3d 542, 553 (3d Cir. 1996) (holding that individual employees may be held liable for aiding and abetting discrimination under § 955(e)).

58. As a result of their actions, Plaintiff suffered economic loss, emotional pain, humiliation, and other damages.

## JURY DEMAND

Plaintiff requests a jury trial on all issued to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, liquidated damages, statutory damaged, attorney's fees, costs, and disbursement of action; and for such other relief as the Court deems just and proper.

DATED: October 24, 2025

FREUNDLICH & LITTMAN, LLC

**/s/ Samuel C. Wilson, Esq.**
Samuel C. Wilson, Esquire
1425 Walnut Street
Suite 200 (2nd Floor)
Philadelphia, PA 19102
215-545-8500
Sam@FandLLaw.com
*Counsel for Plaintiff*